UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
.......................................................................X

In re:

       Michael Maidan,
       dba Grand Avenue Building II, LLC,        Chapter 11
       dba East End Ventures LLC,
       dba 1907 Harrison Realty LLC,        Case No.: 8-19-77027-las
       dba 550 Metropolitan LLC,
       dba 62 Grand Ave LLC,

                          Debtor.
.......................................................................X

       Joshua Maidan,

                  Plaintiff,

         v.

       1907 Harrison Realty, LLC,
       Bernard Jaffe, Jaffe & McKenna,        Adv. Pro. No.: 8-21-08131-las
       Eric Huebscher, as the Liquidation
       Trustee of the Debtor's Estate, and
       Michael Maidan,

                  Defendants.
.......................................................................X

MEMORANDUM DECISION AND ORDER GRANTING
TRUSTEE'S MOTION TO DISMISS COMPLAINT

Plaintiff Joshua Maidan ("Plaintiff") brought this adversary proceeding against

defendants 1907 Harrison Realty, LLC ("Harrison Realty"), Bernard Jaffe ("Jaffe"), Jaffe &

McKenna ("Jaffe Firm"), Eric Huebscher, as the Liquidation Trustee of the Debtor's Estate

("Trustee"), and Michael Maidan ("Debtor") for breach of contract, replevin, unjust

enrichment, and for a declaratory judgment. *See generally* Second Amended Complaint

("Compl." or "Second Amended Complaint"). [Dkt. No. 28]. The Court has jurisdiction over

this adversary proceeding pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the

Standing Order of Reference entered by the United States District Court for the Eastern District of New York, dated August 28, 1986, as amended by Order dated December 5, 2012.

The adversary proceeding arises out of the sale of certain real property owned by Harrison Realty and involves a dispute over $39,596.31 of sale proceeds held in an escrow account allegedly created in connection with a loan in the amount of $81,500 made by Plaintiff to Harrison Realty in 2018, three years before the property was sold. Plaintiff claims that at the time he made the loan it was agreed that $81,500 of the proceeds from a sale of the property would be set aside to cover repayment of the loan. Following the closing of the sale of the property, Plaintiff received $41,903.69. He now asks that the remaining balance of the escrowed funds, i.e., $39,596.31, be released to him and alleges that the Trustee has wrongly prevented him from realizing repayment of the loan. The escrow account is maintained by Jaffe and the Jaffe Firm. In short, Plaintiff claims that the money held in escrow belongs to him and seeks, *inter alia*, a declaratory judgment confirming that he is entitled to the money held in escrow and directing Jaffe and the Jaffe Firm to release the escrowed funds to him in repayment of the loan he made to Harrison Realty in 2018.

Presently before the Court is the Trustee's motion to dismiss the Second Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable to this adversary proceeding by Bankruptcy Rule 7012(b). The Trustee asserts, *inter alia*, that (i) Plaintiff could not have provided a loan to Harrison Realty as it did not exist in 2018, (ii) the escrowed funds belong to the Debtor's estate pursuant to the Debtor's confirmed chapter 11 plan, signed by Plaintiff as administrator of the Debtor's estate, and are earmarked for distribution to general unsecured creditors, and (iii) Plaintiff has, at best, a general unsecured claim and he failed to file a proof of claim in the chapter 11 case. In sum, the Trustee's view is that Plaintiff is

not entitled to any of the sale proceeds currently held in escrow and has brought a separate action against Plaintiff to recover the $41,903.69 Plaintiff received following the closing of the sale of the property.  *See* Adv. Pro. No. 21-8153.

The Court has carefully considered the arguments and submissions of the parties in connection with the motion to dismiss. For the following reasons, the Court grants the Trustee's motion to dismiss the claims asserted against him and the Debtor's bankruptcy estate.

## BACKGROUND

A. Factual Background[1]

The Debtor was in the business of purchasing and developing real property in New York City and throughout Long Island. Compl. ¶ 10. In 2018, the Debtor planned to develop a parcel of real property located at 1907 Harrison Avenue, Bronx, New York 10453 (the "Property"). Compl. ¶ 18. In or about November 2018, the Debtor asked Plaintiff, his son, if he would advance $81,500.00 to cover the initial deposit for the contract of sale. Compl. ¶ 11. This request was allegedly made on behalf of Harrison Realty, a yet unorganized corporation. *Id.* Plaintiff alleges Harrison Realty was a *de facto* corporation at the time the Debtor made the request. *Id.* According to Plaintiff, he agreed to provide the loan on the condition that funds were earmarked at the closing of a sale of the Property for repayment of the loan. Compl. ¶ 12. The earmarked funds were to be held in escrow by Jaffe, the attorney responsible for the closing of the sale of the Property. *Id.* On November 26, 2018, Plaintiff and Harrison Realty signed a loan agreement ("Loan Agreement"). Compl. ¶ 13.

---

[1] The facts stated are taken from the Plaintiff's Second Amended Complaint [Dkt. No. 28], unless otherwise noted, and are accepted as true for the purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). References to the allegations in the Second Amended Complaint should not be construed as a finding of fact by the Court, and the Court makes no such findings.

The Loan Agreement is reproduced in its entirety in paragraph 19 of the Second Amended Complaint and is a one-page document titled Promissory Note. Compl. ¶ 19. Plaintiff alleges that, pursuant to the Loan Agreement, he advanced $81,500.00 to Harrison Realty and repayment was required to be made on or before November 26, 2020. Compl. ¶ 14-15.[2] The Debtor signed the Loan Agreement as an authorized agent of Harrison Realty. Compl. ¶ 16. According to the Debtor's First Amended Disclosure Statement signed by Plaintiff, as Administrator, Harrison Realty was formed in 2019, four months after the date of the Loan Agreement. *See* First Amended Disclosure Statement, p. 6 [Bankr. Dkt. No. 135].[3]

Sadly, during his chapter 11 case, the Debtor passed away. Compl. ¶ 23.  On August 3, 2020, the Surrogate's Court of the State of New York, County of Suffolk, issued Letters of Administration and Plaintiff was named fiduciary of the decedent's estate. [Bankr. Dkt. No. 86]; Compl. ¶ 20. Plaintiff alleges that he continued to operate Harrison Realty for the purpose of completing the planned "purchase" of the Property.[4] Compl. ¶ 22.  On March 22, 2021, Plaintiff emailed the closing payment schedule to counsel for the Debtor to confirm he would be entitled to receive repayment of $81,500.00 at closing of the sale of the Property based upon his loan to Harrison Realty. Compl. ¶ 23. Plaintiff alleges Debtor's counsel responded affirmatively in a written email.[5] Compl. ¶ 24. Harrison Realty's escrow account

---

[2] The Loan Agreement reproduced in paragraph 19 of the Second Amended Complaint, requests that a loan be made on certain terms. Specifically, the Loan Agreement states "Dear Sirs, [t]he aim of this letter is to request a loan for the amount of $81,500. This loan will mature in twenty-four (24) months from the signature date; inception date will be November 26, 2018 and will not bare [sic] any interest.  Sincerely, Joshua Maidan". Compl. ¶ 19.

[3] Docket references to the Debtor's chapter 11 case, Case No. 19-77027-las, are cited as "[Bankr. Dkt. No. __]."

[4] The Court notes the confusion in the Second Amended Complaint between the purchase of the Property and the sale of the Property following the Debtor's filing for chapter 11. A reading of the Second Amended Complaint reveals that the word "purchase" in paragraph 22 should be "sale" as this adversary proceeding involves a dispute over money held in an escrow account in connection with the sale of the Property in 2021.

[5] Neither the alleged email from Plaintiff to Debtor's counsel nor the alleged email response from Debtor's counsel are attached to the Second Amended Complaint.

designated to hold funds following the "purchase" of the Property at closing was controlled by Jaffe.[6] Compl. ¶ 25. In April, 2021, the sale of the Property closed, and Plaintiff received $41,903.69 of the sale proceeds in repayment of the alleged outstanding loan owed to him. Compl. ¶ 26.

Plaintiff alleges that when he sought the balance of the money held in the escrow account, i.e., $39,596.31, from Jaffe, the Trustee advised Jaffe that the bankruptcy estate owned and controlled the balance of the money held in escrow, and Plaintiff was informed that he would not be receiving the funds.[7] Compl. ¶ 28.

B. Procedural History

On October 11, 2019, the Debtor commenced his chapter 11 case by filing a petition for relief under chapter 11 of the Bankruptcy Code. [Bankr. Dkt. No. 1]. The Debtor's First Amended Plan, dated January 13, 2021 and signed by Plaintiff as Administrator, was filed on January 14, 2021 (the "Plan"). [Bankr. Dkt. No. 136]. On March 17, 2021, the Court entered an Order confirming the Plan (the "Confirmation Order"). [Bankr. Dkt. No. 149]. The Plan, *inter alia*, (i) established a Litigation Trust for the benefit of the holders of Class 4 Unsecured Claims and (ii) provided for the vesting of all of the Debtors' Causes of Action in the Litigation Trust as of the Plan Effective Date. *See* Plan, §11.1. The Confirmation Order approved the appointment of the Trustee as the Litigation Trustee of the Litigation Trust. *See* Confirmation Order, ¶¶ 2,4.

---

[6] Again, the Court notes the confusion in the Second Amended Complaint between the purchase of the Property before the Debtor filed for chapter 11 and the sale of the Property following the Debtor's filing for chapter 11. Here, the word "purchase" should be "sale" as the alleged loan was made in connection with the purchase of the Property and the loan proceeds were not held in an escrow account; rather, the money held in the escrow account came from the proceeds of the sale of the Property.

[7] Plaintiff did not seek Court approval for the release to him of $41,903.69 of the money held in escrow and, as noted above, the Trustee has brought an adversary proceeding against Plaintiff challenging Plaintiff's right to receive the $41,903.69. *See* Adv. Pro. No. 21-8153

On May 19, 2021, the Court entered the Plan Modification Order [Bankr. Dkt. No. 166], which, among other things, appointed the Trustee (i) as the Distribution Agent and the Disbursing Agent for Class 4 Claims and (ii) the Debtor's sole administrator and representative of the Debtor's estate pursuant to Section 1.6 of the Litigation Trust Agreement with respect to all assets to be sold or liquidated pursuant to the Plan. *See* Plan Modification Order, pp. 1-2.

The Plan Modification Order also required Plaintiff, as estate administrator to Debtor, to provide "(1) an accounting to the Trustee of all post-petition transactions, (2) all documents and information requested in the Rule 2004 Subpoena issued by Cornelia Financial Ltd. and (3) an amended Statement of Financial Affairs and Schedules to correct any deficiencies," each by June 18, 2021, which was 30 days after the entry of the Plan Modification Order. *Id.* The Litigation Trust Agreement, as approved by the Confirmation Order and the Plan Modification Order, provided that, among other rights, the Trustee had the power to (i) to perform the duties and exercise the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting, or settling causes of action and (ii) protect and enforce the rights to the Litigation Trust assets by any method deemed appropriate. *See* Litigation Trust Agreement, § 2.8. [Bankr. Dkt. No. 151-3].

On August 12, 2021, Plaintiff filed his initial complaint claiming, *inter alia*, that $39,596.31 of the proceeds from the sale of the Property held in escrow must be released and paid to him. [Dkt. No. 1]. On October 11, 2021, the Trustee moved to dismiss the complaint under (i) Fed. R. Civ. P. 12(b)(6) for failure to state a claim and (ii) Fed. R. Civ. P. 12(b)(7) and 19(a) for failure to join the Trustee as a necessary party. [Dkt. No. 19]. On October 13, 2021, the Court issued a Scheduling Order giving Plaintiff the option to either file an amended complaint or oppose the Trustee's motion to dismiss by November 2, 2021.

[Dkt. No. 21]. On November 1, 2021, Plaintiff filed the First Amended Complaint adding the Trustee and Jaffe as named parties. [Dkt. No. 24][8]. On November 3, 2021, after expiration of the Court's deadline in the Scheduling Order and without obtaining consent from the parties to this adversary proceeding or Court approval, Plaintiff filed the Second Amended Complaint. [Dkt. No. 28][9]. On November 12, 2021, the Trustee filed his motion to dismiss the Second Amended Complaint [Dkt. Nos. 36], accompanied by the Trustee's declaration in support of the motion to dismiss [Dkt. No. 37]. Plaintiff filed opposition to the motion to dismiss on December 8, 2021 [Dkt. No. 43], and the Trustee filed a reply on December 20, 2021 [Dkt. No. 44].

The Trustee and Plaintiff agreed to refer the matter to mediation and the Court entered an Order on February 24, 2022 placing the parties in mediation. [Dkt. No. 49]. However, the mediation was unsuccessful. [Dkt. No. 50], and the parties requested that the Court rule on the Trustee's motion to dismiss the Second Amended Complaint. [Dkt. Nos. 51, 53]. A status conference in the adversary proceeding was held on August 4, 2022 at which the Court advised the parties that a decision on the motion to dismiss would be issued.

<u>STANDARD OF REVIEW</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be

---

[8] The Trustee asserts that Plaintiff did not serve the First Amended Complaint on the Trustee or his counsel. No affidavit of service of the First Amended Complaint has been filed on the docket by Plaintiff.

[9] The Trustee asserts that Plaintiff did not serve the Second Amended Complaint on the Trustee or his counsel. No affidavit of service of the Second Amended Complaint has been filed on the docket by Plaintiff.

granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6) a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To meet this standard, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (internal citation and quotation marks omitted). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Applying this plausibility standard is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCall v. Chesapeake Energy Corp.*, 817 F. Supp. 2d 307, 312 (S.D.N.Y. 2011) (quoting *Iqbal*, 556 U.S. at 679). Although all well-pleaded factual allegations in the complaint are assumed true for purposes of a motion to dismiss, *see Koch*, 699 F.3d at 145, this principle is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111 (citations omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). For a court to consider a document external to the complaint as "incorporated by reference," there must be a "clear, definite and substantial reference" to the document in the complaint. *Helprin v. Harcourt*, 277 F. Supp. 327, 330-31 (S.D.N.Y. 2003). "A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011). Conversely, "[m]ultiple references to, and lengthy quotations from, an outside document have been considered sufficiently substantial to incorporate the document into the complaint by reference." *Allen v. Chanel Inc.*, No. 12 CV 6758(RPP), 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013).

"Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "For a document to be considered integral to the complaint, the plaintiff must 'rel[y] on the terms and effect of a document in drafting the complaint . . . mere notice or possession is not enough.'" *United States ex. rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *Chambers*, 282 F.3d at 153). "And 'even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document,' and it must be clear that

'there exist no material disputed issues of fact regarding the relevance of the document.'"

*Id.* (quoting *DiFolco*, 622 F.3d at 111).

"If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond,* 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (quoting *Poindexter v. EMI Record Grp. Inc.,* No. 11 Civ. 559 (LTS), 2012 U.S. Dist. LEXIS 42174, at *6 (S.D.N.Y. Mar. 27, 2012)) (internal quotation marks omitted).

Lastly, a court may take judicial notice of matters of public record, including documents filed in other court proceedings, when considering a motion to dismiss. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991). However, courts may only take judicial notice of documents from other court proceedings "to establish the fact of such litigation and related filings" and "not for the truth of the matters asserted in the other litigation." *Id.* at 774.

## DISCUSSION

The Second Amended Complaint asserts claims for breach of contract, replevin, unjust enrichment, and for a declaratory judgment. The Court first addresses Plaintiff's claim for declaratory relief and then turns to his remaining claims.

A. Declaratory Judgment

Plaintiff seeks a declaratory judgment that the money held in the escrow account created in connection with the sale of the Property belongs to him because (i) the Loan Agreement was between Harrison Realty and Plaintiff and (ii) Harrison Realty is not a debtor before this Court and the proceeds of the sale of Property owned by Harrison Realty are not property of the Debtor's bankruptcy estate. As such, Plaintiff contends that the Debtor and his bankruptcy estate do not have an interest in the funds held in escrow. This, according to Plaintiff, supports his request for a declaratory judgment that the funds are

not property of the bankruptcy estate and must be released to him in payment of his loan to Harrison Realty.

The Trustee disagrees and argues that Plaintiff's claim for a declaratory judgment fails to state a claim as it is predicated on an alleged loan in 2018 to Harrison Realty, an entity that was not formed until four months after the purported loan was made and fails to adequately plead that Harrison Realty was a *de facto* corporation at the time of the loan transaction. Additionally, the Trustee argues that Plaintiff's claim ignores the terms of the Debtor's confirmed chapter 11 plan, signed by Plaintiff as administrator, that earmarks the proceeds from the sale of the Property for distribution to unsecured creditors.

For the following reasons, the Court declines to exercise its discretion to consider Plaintiff's request for declaratory judgment. Plaintiff has not pled an actual controversy sufficient to state a claim for declaratory relief.

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The standard for ripeness in a declaratory judgment action is that 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) (quoting *Maryland. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). To constitute an "actual controversy," the disagreement between the parties "must have taken on [a] fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Jenkins v. United States*, 386 F.3d 415, 418 (2d Cir. 2004)) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, Inc., 344 U.S. 237, 244 (1952)). "Even where an actual

controversy has been established, a court must still decide whether it will exercise its discretion to entertain a request for declaratory judgment." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010). "'[I]t is well settled that the trial court's decision to exercise declaratory jurisdiction is a discretionary one.'" *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998, 1000 (2d Cir. 1969) (quoting *Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d 501, 505 (2d Cir. 1968)). In deciding whether to exercise its discretion and entertain a request for declaratory relief, a court must consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade*, 411 F.3d at 389 (citation omitted).

Here, as noted above, Plaintiff seeks a declaratory judgment that he is entitled to the money held in escrow for two reasons. First, he argues that because the Loan Agreement was between him and Harrison Realty, the loan must be repaid from the proceeds of the sale of the Property, an asset of Harrison Realty and not that of the Debtor. Second, Plaintiff argues that Harrison Realty is not a debtor in this chapter 11 case and the Debtor's bankruptcy estate does not, therefore, have an interest in the proceeds generated by the sale of the Property.

In support of his first argument, Plaintiff includes an image of a document purported to be the Loan Agreement in the Second Amended Complaint. Compl. ¶ 19. The Loan Agreement is signed by Plaintiff and the Debtor as "Authorized Signatory for Harrison Realty LLC" on November 26, 2018. *Id.* However, Harrison Realty was formed in 2019, four months after the Loan Agreement was entered into. *See* First Amended Disclosure Statement. [Bankr. Dkt. No. 135]. Plaintiff nevertheless states that Harrison Realty was a *de facto* corporation at the time of the loan transaction and thus had the

capacity to enter into the Loan Agreement. "'Under very limited circumstances, courts may invoke the de facto corporation doctrine where there exists (1) a law under which the corporation might be organized, (2) an attempt to organize the corporation and (3) an exercise of corporate powers thereafter.'" *Hwang v. Grace Road Church (in New York)*, No. 14-CV-7187, 2016 WL 1060247, at *8 (E.D.N.Y. Mar. 14, 2016) (quoting *In re Hausman*, 13 N.Y.3d 408, 412, 921 N.E.2d 191, 193 (2009)). The second requirement, "an attempt to organize the corporation," has been narrowly construed. *Id.* "There must be a 'colorable attempt to comply with the statutes governing incorporation' prior to the exercise of corporate powers." *Id.* (quoting *Kiamesha Dev. Corp. v. Guild Props., Inc.,* 4 N.Y.2d 378, 388, 151 N.E.2d 214, 219 (1958)). "In order to be considered a *de facto* corporation, a business 'must function as if it were a corporation and make substantial efforts to either incorporate or remedy any defects of incorporation upon their discovery.'" *Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*, No. 05- CV-3826 (CPS) (RML), 2009 WL 2242331, at *6 (E.D.N.Y. July 27, 2009) (quoting *Animazing Entertainment v. Louis Lofredo Assoc.*, 88 F. Supp. 2d 265, 269 (S.D.N.Y. 2000)). "New York courts recognize a business as a *de facto* corporation in cases where the business inadvertently failed to meet the requirements of the law or was operating with the formalities of a corporation and was attempting to achieve legal status." *Id.*

Applying these standards here, the Second Amended Complaint is deficient. Plaintiff has failed to plausibly allege that Harrison Realty was a *de facto* corporation at the time of the loan transaction.[10] Notably absent from the Second Amended Complaint are any factually substantiated allegations sufficient to support Plaintiff's otherwise conclusory

---

[10] The *de facto* corporate doctrine applies to both corporations and limited liability companies. *See Hausman*, 13 N.Y.3d at 412 ("The statutory schemes of the Business Corporation Law and the Limited Liability Company Law are very similar, and we see no principled reason why the de facto corporation doctrine should not apply to both corporations and limited liability companies.").

statement that Harrison Realty was a *de facto* corporation capable of entering into a loan transaction with Plaintiff, *see* Compl. ¶ 11. There are no allegations that Harrison Realty made a "colorable attempt" to file articles of organization with the New York Department of State prior to the date of the Loan Agreement, that Harrison Realty drafted an operating agreement prior to the date of the Loan Agreement, that Harrison Realty's failure to meet the requirements of the law was inadvertent, or that it had made any attempt to achieve legal status. Absent any factually substantiated allegations that Harrison Realty was a *de facto* corporation at the time Plaintiff claims to have entered into the Loan Agreement with Harrison Realty, the Court finds that Plaintiff has failed to allege that the *de facto* corporate doctrine is applicable here. As such, it is not clear from the Second Amended Complaint that the "controversy" has "taken on [a] fixed and final shape". *See Jenkins*, 386 F.3d at 418.

Plaintiff's second argument in support of its request for declaratory relief fares no better. In Plaintiff's view, Harrison Realty is a separate entity and its asset, to wit, the Property, is not property of the Debtor's estate and the proceeds of the sale of the Property cannot be used to fund a distribution under the Debtor's Plan before debts and obligations of Harrison Realty are satisfied. However, the failure to adequately plead the *de facto* corporation doctrine affects Plaintiff's second argument in support of its request for declaratory relief. That argument rests on establishing that Harrison Realty was a *de facto* limited liability company capable of entering into the contractual loan transaction with Plaintiff and incurring the debt from Harrison Realty to Plaintiff under the Loan Agreement. As stated above, the Second Amended Complaint falls short as it fails to plausibly allege any "colorable attempt" by Plaintiff to comply with the statutory filing requirements to establish its *de facto* existence.

Additionally, the Trustee takes a different view of the chapter 11 case and the use of the sale proceeds to fund a distribution to unsecured creditors. He contends that Plaintiff's argument ignores what occurred during the chapter 11 case, including under Plaintiff's watch as administrator of the Debtor's estate when the Debtor passed away, and the express language of the Debtor's First Amended Disclosure Statement and the Plan, both of which were signed by Plaintiff, and specify how the Plan is funded.

Plaintiff counters this argument in its opposition brief. There, Plaintiff alleges that it is only the Debtor's equity in Harrison Realty that may be used to fund distributions under the Plan. Although the Second Amended Complaint states in conclusionary fashion that the Plan "directed that the Debtor's equitable interest in [Harrison Realty] be liquidated," *see* Compl. ¶ 34, the theory that Plan funding is limited to the Debtor's equity is raised for the first time in Plaintiff's opposition brief. Plaintiff cites to specific sections of the First Amended Disclosure Statement and to § 7.1(b) of the Plan to support its theory that with respect to Harrison Realty, Plan funding is limited to "distribution from the Debtor's equity in [Harrison Realty]."

Plaintiff's argument does not carry the day for two reasons. First, as explained above, Plaintiff must sufficiently plead that Harrison Realty had a *de facto* corporate existence at the time of the loan transaction capable of incurring a debt. That it failed to do. Second, a plaintiff may not amend its pleading through an opposition brief. "It is well-settled that a plaintiff 'cannot amend [its] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'" *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (quoting *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)); *see also Wright v. Ernst & Young*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting argument raised for first time in opposition to a motion to dismiss the complaint); *Thomas v. City of New York*, No. 12-CV-5061(FB)(SMG), 2013 WL 3810217, at

15

*3 (E.D.N.Y. July 23, 2013). Accordingly, for purposes of ruling on the motion to dismiss, the Court has not considered the additional factual allegations and theory asserted in Plaintiff's opposition brief. *Peacock*, 100 F. Supp. 3d at 231.

For the reasons stated above, Plaintiff has failed to state a claim for declaratory relief. The Court now turns to the remaining claims asserted by Plaintiff. As discussed below, each of these claims fail as they are predicated on Plaintiff adequately pleading that Harrison Realty was a *de facto* limited liability company at the time of the alleged loan transaction with Plaintiff.

B. Breach of Contract

Plaintiff alleges that Harrison Realty breached the Loan Agreement by failing to pay the $39,596.31 balance due on his alleged loan to Harrison Realty. As discussed above, that amount represents proceeds of the sale of the Property and is currently held in escrow by Jaffe and the Jaffe Firm. Although the breach of contract count is not specifically directed at the Trustee, Plaintiff alleges that the Trustee has wrongly prevented Plaintiff from receiving the escrowed funds by advising Jaffe that the monies held in escrow constitute property of the estate. The Court, therefore, addresses the claim for breach of contract in the context of the Trustee's motion to dismiss as it too is predicated on Plaintiff having established, in the first instance, that Harrison Realty was a *de facto* limited liability company at the time of the alleged Loan Agreement. Plaintiff's failure to include factually substantiated allegations that Harrison Realty was a *de facto* limited liability company at the time of the alleged Loan Agreement is fatal to its breach of contract claim.

To state a claim for breach of contract under New York law, a plaintiff must allege four elements: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *JJCC Real Estate LLC v. Brooklyn Renaissance, LLC (In re Brooklyn Renaissance, LLC)*, 556 B.R. 68,

16

75 (Bankr. E.D.N.Y. 2016) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996));
*see also Canzona v. Atanasio*, 989 N.Y.S.2d 44, 47 (2d Dep't 2014). Here, Plaintiff has failed
to demonstrate the existence of a contract. "Under New York law, a nonexistent corporation
does not have the legal capacity to form a contract." *Gelfman Int'l Enters.*, 2009 WL
2242331, at *8 (citing *Animazing Entertainment*, 88 F. Supp. at 270). Because Plaintiff has
not stated a plausible claim that Harrison Realty had a *de facto* existence at the time the
alleged contract was entered into, Harrison Realty was not party to the contract. "It is well-
settled under contract formation law in New York that there must be two parties to a
contract . . . . If one of the parties is wanting, then one of the formal constituents of a legal
transaction is absent." *Animazing Entertainment*, 88 F. Supp. at 271 (quoting *Int'l Sport
Divers Ass'n v. Marine Midland Bank*, 25 F. Supp. 2d 101, 112 (W.D.N.Y. 1998)).
Accordingly, absent factually substantiated allegations that Harrison Realty was a *de facto*
limited liability company at the time the Loan Agreement was signed, Plaintiff's claim of
breach of contract fails.

    C. Unjust Enrichment[11]

    The fourth count in the Second Amended Complaint is for unjust enrichment.
Plaintiff claims that retention of the escrowed funds by Jaffe and the Jaffee Firm and the
failure to release the money held in escrow to Plaintiff has unjustly enriched the Debtor's
bankruptcy estate at the expense of Plaintiff. This claim, like Plaintiff's claims for
declaratory relief and breach of contract, is predicated on Plaintiff demonstrating that
Harrison Realty had a *de facto* corporate existence at the time of the Loan Agreement
capable of signing a contract and incurring debt. As discussed above, Plaintiff has failed to

[11] The third count in the Second Amended Complaint, replevin, is directed at Jaffe and the Jaffe Firm, not the Trustee. Accordingly, the Trustee's motion to dismiss did not address this count. The Court notes that this count is likewise predicated on Plaintiff establishing that Harrison Realty had a *de facto* corporate existence at the time of the Loan Agreement.

17

do so. That failure is fatal to its claim that the Debtor's bankruptcy estate has been unjustly enriched by the retention by Jaffe and the Jaffe Firm of the money held in escrow.

To state a claim for unjust enrichment, a plaintiff must allege "(1) the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). "The mere fact that the defendant received a benefit is insufficient; the plaintiff must show that the enrichment was unjust." *Gelfman Int'l Enters.*, 2009 WL 2242331, at *9.

For the following reasons, Plaintiff has failed to state a claim for unjust enrichment. First, the Debtor's estate has yet to receive any of the money held in escrow. Second, by failing to show that Harrison Realty had a *de facto* corporate existence at the time of the Loan Agreement, Plaintiff has not sufficiently alleged that he is entitled to the money held in escrow and that the Debtor's estate has, therefore, unjustly benefitted by the continued retention of the escrowed funds by Jaffe and the Jaffe Firm. Third, the mere claim by the Trustee that the funds are property of the Debtor's estate does not, in and of itself, support a claim of unjust enrichment. Further, if Plaintiff had established the existence of a contract between him and Harrison Realty by sufficiently pleading that Harrison Realty had a *de facto* existence at the time of the Loan Agreement, that contractual relationship may very well preclude Plaintiff's separate claim of unjust enrichment. "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005). If the contract covers the dispute between the parties, there is no unjust enrichment as "the matter is controlled by contract." *Id.* (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)). "The existence of a valid and enforceable written contract

governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick,* 70 N.Y.2d at 388.

CONCLUSION

For the reasons set forth above, the Trustee's motion to dismiss the claims asserted in the first count (declaratory relief), second count (breach of contract), and fourth count (unjust enrichment) of the Second Amended Complaint is granted. If Plaintiff seeks to amend his Second Amended Complaint and has a good faith basis to do so, he must file a motion for leave to amend within 14 days of the date of this Memorandum Decision and Order.

So Ordered.



Dated: September 9, 2022
       Central Islip, New York

Louis A. Scarcella
United States Bankruptcy Judge